Commonwealth *v.* Daniels, Appellant.

Argued January 17, 1974. Before JONES, C. J. EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stanley M. Schwartz,* with him *Richard B. Schwartz,* and *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot,* for appellant.

*John H. Isom,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Rich-*

*ard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 25, 1974:

Appellant, Harold Daniels, was convicted by a jury, of murder in the first degree, aggravated robbery and conspiracy. Post-trial motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

Appellant was "picked up" by the Philadelphia police on February 11, 1970, at approximately 7:00 p.m., for questioning concerning a homicide committed in Philadelphia. Appellant and his girl friend, Diane Jones, who were then in the process of cooking dinner, immediately stopped what they were doing and went with the police to headquarters for questioning. Appellant was advised of his rights and interrogated until 8:00 p.m., when the first interrogation sessions ended. Appellant was then given two polygraph tests. He was then returned to the interrogation room and questioning began anew at 12:05 a.m. Appellant's interrogation finally concluded in the early hours of February 12, 1970, when he gave his incriminating statement.

Appellant contends that his confession should have been suppressed because it was the product of an illegal arrest, one made without probable cause. At the suppression hearing, the Commonwealth took the position that appellant was not under arrest when he accompanied the police to headquarters for questioning. The Commonwealth also contended that, if appellant was under arrest, it was a legal arrest because it was based on probable cause. According to the opinion of the suppression court, appellant was not under arrest but, assuming he were under arrest, the arrest was supported by probable cause. In addition, the suppression court determined that, in any case, the confession was

not the product of the arrest and, therefore, was admissible even if that arrest were illegal. The Commonwealth, in its brief, relied upon this last contention.

We shall discuss each of the Commonwealth's alternative positions seriatum.

(1) Appellant was not under arrest at the time of his confession. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963), we defined the term "arrest" as follows: "An arrest may be accomplished by an act that indicates an intention to take [a person] into custody and that subjects him to actual control and will of the person making the arrest." Page 68.

On the facts of this case, we are convinced that appellant was under arrest. Although the police testified that they had simply "requested" that he accompany them for questioning, the facts indicate that appellant was not free to refuse to comply with their request. For one thing, although appellant was preparing dinner when the police came to the door, the officers admitted that he was not given time to complete preparation and that, in fact, he had no dinner. To us, this indicates that appellant was subject to the will of the officers. For another, the police admitted that once appellant had "failed" the polygraph test, he immediately became a suspect. It strains credibility to believe that, even then, he remained free to leave. It is worth noting, moreover, that the officers who testified at the suppression hearing, and the prosecuting attorney, constantly referred to the "arrest" of appellant.

(2) The arrest was based on probable cause. The Commonwealth's contention that if there was an arrest, it was based on probable cause stems from the testimony at the suppression hearing that before the police "picked up" appellant, they had been given the following information:

(a) Interrogation of people who lived in the neighborhood where the crime was committed disclosed a possible eyewitness who stated that he had seen two young men acting in a suspicious manner at the approximate time which the murder occurred. One of the suspicious men was described as follows: ". . . He was a Negro . . . he was approximately 20 years of age . . . he was 5 foot 11 to 6 feet tall . . . he had a slender built [sic], he weighed about 165 pounds, he had a light brown complexion, he had a long dark coat and a small dark cap and a slender face."

The arresting officer further testified that through his work with juvenile gangs in the area, he knew three men, including appellant, who fit that general description.

(b) An anonymous caller told the police that a man known as "dead leg" was involved in the murder. The arresting officer testified that he knew appellant had been nicknamed "deadleg".

The Commonwealth admits that neither the anonymous tip nor the general description would alone be sufficient to establish probable cause, but takes the position that taken together, the two pieces of information were sufficient to justify the arrest. We do not agree. While it is true, as we recognized in *Commonwealth v. Mamon*, 449 Pa. 249, 297 A. 2d 471 (1972), that two sources, insufficient in themselves, can sometimes establish probable cause when taken together, both such sources should be of a higher quality than those involved here.

In *Mamon, supra,* one source was an anonymous informant who claimed to be an eyewitness and named the defendant. The other was a victim, who had been severely injured and consequently "not capable of rationally reasoning" on the date of her identification, but who was, nevertheless, able to identify the defend-

ant as her assailant. Thus, both sources indicated that they were eyewitnesses and both specifically identified the defendant as the perpetrator of the crime.

In the instant case, on the other hand, neither source can be said to be an eyewitness. The first source, only observed two men acting "suspiciously" and had no idea of the identities of the people he observed. The second source, who specifically named appellant, gave no indication of how he obtained his information.

While the information which the police received certainly warranted further investigation, it did not entitle the police to arrest appellant.

(3) The confession was not the product of the arrest. According to the Commonwealth, even if appellant was arrested without probable cause, the confession given by appellant was the product, not of the illegal arrest, but of an independent act of appellant's free will. In *Commonwealth v. Brown,* 451 Pa. 395, 301 A. 2d 876 (1973), quoting from *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661 (1967), we stated: ". . . if the connection between the arrest and the confession is shown to be so vague or tenuous 'as to dissipate the taint' *or* 'sufficiently an act of free will,' the confession is admissible, despite the illegality of the arrest. By 'sufficiently an act of free will,' we mean that not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest. . . ." At pages 401-02.

The Commonwealth argues that the record substantiates their claim that the confession was a product of appellant's own free will and cites *Commonwealth v. Fogan,* 449 Pa. 552, 296 A. 2d 755 (1972), for authority for this proposition. However, in *Fogan, supra,* we found that the defendant's confrontation with a fellow gang member who stated that the defendant was the killer, prompted the confession, rather than

the police interrogation. In the instant case, we find no intervening act that produced appellant's confession, other than the police interrogation. After his initial arrest, appellant was questioned for about an hour and then given two polygraph tests. After he was informed that the police did not believe his initial story and further interrogation was necessary, appellant gave his statement. This all occurred within seven hours of his illegal arrest. In addition, appellant's girl friend was held for questioning during the entire time appellant was being questioned, which could have led appellant to fear, as he contends, that she, too, might be implicated in the crime.

The Commonwealth also argues that the fact that appellant was given his *Miranda* warnings before questioning should be enough to purge the taint of the illegal arrest. In *Brown, supra,* in rejecting this argument, we stated: "To accept such an argument would be to permit the Commonwealth in the course of its investigation to arrest . . . individuals and to confine them illegally, hoping that [the arrestees] would voluntarily confess to the crime." at page 403. See *Betrand Appeal,* 451 Pa. 381, 303 A. 2d 486 (1973).

Although appellant raises other allegations of error, in view of the result we have reached, we need not discuss them.

Judgment of sentence reversed and case remanded for new trial.

Mr. Chief Justice JONES and Mr. Justice EAGEN dissent on the basis of this court's decision in *Commonwealth v. Bishop,* 425 Pa. 75, 228 A. 2d 661 (1967).

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court because it appears that the warrantless arrest here involved was made without fair basis for a belief that probable cause

existed for appellant's arrest, and that the uncounselled statement appellant made thereafter should have been suppressed. *See Betrand Appeal*, 451 Pa. 381, 392, 303 A. 2d 486, 492 (1973) (concurring opinion of this writer).