368 A.2d 1279
COMMONWEALTH of Pennsylvania,
Appellant,
v.
Harold DANIELS.

Supreme Court of Pennsylvania.

Argued April 11, 1975.

Decided Nov. 26, 1975.

Supplemental Opinion, Jan. 28, 1977.

524

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Mark Sendrow, Philadelphia, for appellant.

Stanley M. Schwarz, Richard B. Schwartz, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On May 27, 1971, Harold Daniels was convicted by a judge, sitting with a jury, of murder in the first degree, aggravated robbery, and conspiracy, arising out of the stabbing death on February 8, 1970, of Francis George, a student at the University of Pennsylvania. Post-trial motions were denied by a court en banc and Daniels was sentenced to life imprisonment. This court reversed the conviction with a ruling that Daniels had been arrested without probable cause and that his confession was a product of the illegal arrest and should have been suppressed. The case was remanded for a new trial. *Commonwealth v. Daniels*, 455 Pa. 552, 317 A.2d 237 (1974).

Prior to retrial of his case, Daniels filed a motion to suppress all evidence, both verbal and physical, obtained as a result of his illegal arrest. The hearing judge granted Daniels' pretrial motion and the Commonwealth filed this appeal from the suppression order, alleging that the order substantially prejudiced its case.[1]

The issue presented in this appeal is whether the names of certain witnesses, obtained from Diane Jones, were admissible at appellee's trial.

■■ The circumstances leading up to the statement of Diane Jones are as follows. Diane Jones, Daniels' girl friend, was with him the night he was illegally arrested at his home. When Daniels was thereafter taken to police headquarters, Diane Jones asked for, and was granted, permission to accompany him to police headquarters.

1. This Court, on October 8, 1974, vacated a stipulation entered into between the prosecution and defense counsel and remanded the case for an evidentiary hearing on appellee's suppression motion. This stipulation, if honored, would have barred the testimony of Diane Jones as being the product of an illegal arrest. On remand from this Court, appellee's suppression motion nevertheless was granted.

There she was interviewed by the police and gave them the names of Commonwealth witnesses David Michael Francis, Alexander Drain, Michael Presley and Anthony Rush. Daniels now seeks to suppress this statement as being the fruit of the poisonous tree under our decision in *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972). We do not agree. In *Cephas,* we held that a witness who was found as the result of an illegal search was the fruit of the poisonous tree and could not testify against a defendant. We based our decision in *Cephas* on the fact that the witness who was found would not have been located but for the illegal search and illegal arrest. This conclusion was supported by the fact that if the witness had come forward to testify, she would have had to implicate herself in certain criminal activities, and that after the witness was found, police pressure motivated her statements. In *Cephas,* based on these facts, we found that the Commonwealth had found a witness as the result of an illegal search and could not meet its burden of establishing that the testimony of the witness was purged of any illegal taint and, therefore, admissible.

In the instant case, the identity and statement of Diane Jones does not fall within the *Cephas* rationale for two reasons. First, Diane Jones was the person who initially called the police and informed them that "Dead Leg" (Daniels' nickname) may have committed the homicide. This information led the police to Daniels' residence, where Diane Jones was at the time preparing dinner. Second, Diane Jones voluntarily went to police headquarters with Daniels and thereafter voluntarily gave the statement that is now in question. In the instant case, Diane Jones, unlike the witness in *Cephas,* was present because of her direct actions of calling the police with an anonymous "tip", and voluntarily accompanying appellee to police headquarters and giving the police a statement of her own free will. Based on these facts, the testimony of Diane Jones does not fall within

the *Cephas* rationale. Having decided the names of the above-mentioned witnesses were secured properly, we also find that the testimony of the witnesses that led to any further evidence or witnesses is also admissible.

Order reversed. Case remanded for proceedings consistent with this opinion.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, Justice (dissenting).

The majority, apparently led astray by its superficial consideration of the facts of this case, has failed to consider the threshold issue of this appeal, whether the Commonwealth remains, at this stage of the proceedings, bound by the stipulation it entered in the suppression court.[1] Because the majority thus erroneously considers the question whether the Commonwealth has satisfied its burden of proving the admissibility of challenged evidence without regard to the stipulation, I dissent.

Francis George was stabbed to death by Harold Daniels and John Rush in West Philadelphia on February 8, 1970. The Philadelphia police began an investigation under the direction of Lieutenant Donald Patterson and Detective Joseph Schimpf. A general description of the assailants by an eyewitness and an anonymous telephone "tip" caused the investigation to focus on Daniels. In

1. The majority avoids this issue by stating: "This Court, on October 8, 1974, vacated a stipulation entered into between the prosecution and defense counsel and remanded the case for an evidentiary hearing on appellee's suppression motion." *Supra* at 1280, n. 1. The October 8 order merely stated: "Petition to remand for supplemental evidentiary hearing granted." This eight word order in no way supports the majority's assertion that we vacated the stipulation. Such a request was not even before us. See *infra* at 1282.

the early evening of February 11, two police officers went to Daniels' home and arrested him. In Daniels' home at the time of his arrest was his girlfriend, Diane Jones, of whom the police had no knowledge prior to this time. Ms. Jones sought and received permission to accompany Daniels. Both Daniels and Jones were brought to the Police Administration Building.

Between the early evening of February 11 and mid-morning of February 12, a series of events ensued whose chronological order and relationship to each other are almost impossible to discern from the extremely tangled record. Throughout the period Daniels was interrogated and subjected to one or more polygraph examinations. At some time during the night Daniels admitted his participation in the killing of George and implicated John Rush as his accomplice. The police immediately arrested Rush; after interrogation he also admitted his complicity.[2] In addition, Ms. Jones, who remained at the police headquarters for the entire period, was questioned by Detective Ellis Verb. At some time in the early morning, Ms. Jones gave the police a formal statement that implicated Daniels.

From the statements given by Daniels, Rush, and Jones,[3] the police learned the location of the murder weapon and the names of certain persons with information concerning the crime. Those persons are Michael Francis, Michael Presley, Anthony Rush, Alexander Drain, and Charles McEachin.

Daniels was charged with murder, robbery, and conspiracy. At his trial in May, 1971, the Commonwealth introduced into evidence Daniels' confession, the murder weapon, and the testimony of Francis, Presley, Drain, and McEachin that Daniels admitted to them that he had stabbed George in the course of a robbery. Daniels was

2. See *Commonwealth v. Rush*, 459 Pa. 23, 326 A.2d 340 (1974).

3. Precisely what was learned from each and when and how it was learned are among the central disputes in this case.

convicted of all charges and sentenced to a term of life imprisonment.

He appealed to this Court. We held that Daniels' arrest was without probable cause and therefore illegal, and that his confession was the product of the arrest and therefore should not have been admitted into evidence. We remanded for a new trial. *Commonwealth v. Daniels*, 455 Pa. 552, 317 A.2d 237 (1974).

Following the remand, Daniels filed a motion to suppress the murder weapon and the testimony of Diane Jones, John Rush, Michael Francis, Michael Presley, Anthony Rush, Alexander Drain, and Charles McEachin. Daniels argued that the police learned of the weapon and the witnesses a result of his confession and, thus, they were derivative products of the illegal arrest. A suppression hearing was held on April 25, 1974. The Commonwealth offered no evidence, entering instead into the following stipulation:

"[T]he identities of the witnesses Michael Francis, Michael Presley, also known as Blood, Alexander Drain, Anthony Rush, John Rush, Charles McEachin, Diane Jones, and the existence of the knife were disclosed to the Commonwealth solely and entirely as a result of the statement given by Daniels to the police, and which statement has been suppressed by the Supreme Court of Pennsylvania . . . . "

On May 13, 1974, the court entered an order granting Daniels' motion to suppress the knife and the testimony of the named witnesses. The Commonwealth filed an appeal to this Court. After the docketing of the appeal, the Commonwealth filed a petition alleging that

"the Assistant District Attorney in the [suppression] proceeding . . . mistakenly entered into a stipulation of the facts solely as a result of erroneous representations by [Daniels' counsel] . . . ."

The petition requested the court to remand the case for a supplemental evidentiary hearing. Daniels' counsel filed

an answer to the petition denying that he made any mis-representations or that the Commonwealth had entered into the stipulation on the basis of any misrepresentations. On October 8, 1974, the Court granted the petition and remanded the case for a hearing.

The suppression court held a hearing on November 13, 18, and 19, 1974. The court refused to hear evidence concerning the entry of the stipulation, believing its task to be the determination of the underlying question of whether the Commonwealth's evidence had a basis independent of Daniels' confession. The Commonwealth offered the testimony of police officers Patterson, Schimpf, Verb, Brown, and Bacher. On January 28, 1975, the court filed a report containing the following conclusions:

"6. The police first learned of the existence of the names of the following witnesses from statements given after Harold Daniels was taken to Homicide Headquarters on February 11, 1970:

"*From Diane Jones:*

Michael Francis
Michael Presley (Preston, Blood)
Anthony Rush
Alexander Drain
Harold Daniels

"*From Harold Daniels:*

John Rush
Michael Francis
Michael Preston (Presley)
Anthony Rush
Charles McEachin

Diane Jones was also mentioned, but the Police already knew of her.

"*From John Rush:*

Alexander Drain

Diane Jones was also mentioned, but the Police already knew of her.

"7. The statements of Diane Jones, Harold Daniels and John Rush were given independently of each other."

The majority perceives the sole question for decision to be "whether the names of certain witnesses obtained from Diane Jones, a witness who was found as the result of an illegal search, are the fruit of the poisonous tree and thus inadmissible." Ante at 1280. It has thus ignored the threshold issue of the effect of the factual stipulation that the weapon and the named witnesses were "solely and entirely" derived from the arrest and confession of Daniels.[4] I conclude that, whatever may be the standards for relieving a party of his stipulations during the proceeding in which it is entered, it is improper to allow the Commonwealth to pursue a particular litigation strategy that includes a deliberate admission in open court that the facts are as represented and, when that strategy fails, have a second chance with what it hopes will be a more successful strategy.

At the suppression hearing of April 25, the Commonwealth chose not to present any testimony, instead stipulating to the facts, apparently content to rely on its legal argument that the evidence in question was admissible notwithstanding its derivation from an illegal arrest. The suppression court disagreed. Following the suppression order and the filing of an appeal in this Court, the Commonwealth decided that it should have attempted to prove the existence of an independent basis for its acquisition of the challenged evidence.

4. The majority's formulation of the issue for decision also fails to deal with the whole suppression order. Accepting for the moment the suppression court's conclusions of January 28, the most that the police could have learned from Diane Jones was the existence of Michael Francis, Michael Presley, Anthony Rush, and Alexander Drain. But the suppression order included the murder weapon and the testimony of Charles McEachin, John Rush, and Diane Jones herself. Since the majority fails to deal with that portion of the suppression order, it apparently intends to affirm the order to that extent.

It is surely the general rule that, absent some extraordinary justification, a party has one and only one opportunity to carry his burden of proof. The Commonwealth once failed to carry its burden of proving admissibility and, absent a compelling justification, ought not to be permitted to try again. The Commonwealth sought that second chance by its claim that the stipulation was erroneous and that this circumstance entitled it to another opportunity to carry its burden. I assume that, under certain circumstances, a showing that the Commonwealth was laboring under the constraint of an erroneous stipulation would entitle it to that second opportunity. However, after entry of an order concluding the proceeding, fairness to the defendant and the integrity of the judicial process require, in my view, that the showing include proof that the Commonwealth exercised reasonable diligence in attempting to learn the facts and that it reasonably relied on defense counsel's misrepresentation of the facts.

The Commonwealth believed that some sort of showing similar to that articulated here was necessary for relief from its stipulation, for it alleged in its petition that its attorney "mistakenly" entered the stipulation "as a result of erroneous representations of" defense counsel. When this Court granted the Commonwealth's petition on October 8 and remanded the matter for an evidentiary hearing, it could only have been to permit the Commonwealth to prove the existence of circumstances which would entitle it to relief from its stipulation. It is clear that the Commonwealth may not, absent proof of justifying circumstances, simply discard its stipulations and have a second opportunity to carry its burden of proof. And it surely did not prove the existence of those circumstances in this Court. All we had before us were the Commonwealth's allegation and Daniels' denial. That we somehow determined from the petition and answer that justifying circumstances existed is plainly beyond the realm of possibility. The only course open to us was to

remand for an evidentiary hearing in which the Commonwealth could attempt to prove the facts necessary for entitlement to relief.

It is difficult for me to imagine how the Commonwealth could prove its entitlement to relief. The now-disputed facts concern how the police came to learn of the existence of certain witnesses. Why the Commonwealth's attorney could not, in the exercise of reasonable diligence, have examined the file and formulated his own view of the facts, and how he could have reasonably relied on defense counsel's representation of matters peculiarly within the knowledge of the police are mysteries to me. In any event, contrary to the majority's unsupportable assertion, our remand was designed to permit the Commonwealth to attempt to make the necessary showing.

However, since the purpose of the hearing was misperceived by the Commonwealth and the suppression court, the record remains barren of proof of circumstances justifying relief from the stipulation. Consequently, the Commonwealth remains bound by its stipulation specifying that the sole basis for police knowledge of the murder weapon and the witnesses was Daniels' tainted confession.

On this appeal, therefore, the Commonwealth is entitled to no more than a second opportunity to prove its entitlement to relief from the stipulation. The majority, however, releases the Commonwealth from its stipulation without the necessary showing of entitlement, reaches the question whether the Commonwealth, without regard to the stipulation, has proven admissibility, and reverses the suppression order. In my view, the majority has far exceeded the proper bounds of appellate review and, in doing so, has impeached the integrity of the judicial process. Therefore, I dissent.

MANDERINO, J., joins in this dissenting opinion.

534

## SUPPLEMENTAL OPINION OF
## THE COURT

PER CURIAM:

■ Case remanded to the Court of Common Pleas of Philadelphia for an evidentiary hearing and determination of whether the stipulation entered into by defense counsel and the Commonwealth is a valid and an enforceable stipulation.