525 A.2d 1177

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph A. DUNCAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1986.

Decided May 20, 1987.

396

John A. Reilly, Dist. Atty., Sandra L. Elias, Deputy Dist. Atty., for appellant.

Emilio DiMatteo, Jr., Chester, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PAPADAKOS, Justice.

This is an interlocutory appeal [1] by the Commonwealth of Pennsylvania (Appellant) challenging Superior Court's Order of July 5, 1985, affirming the pre-trial suppression order of the Court of Common Pleas of Delaware County which granted Appellee's motion to suppress his inculpatory statement on grounds the "six hour rule" enunciated in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), [2] had been violated. The suppression court concluded that Appellee was under arrest at the time he "blurted out" the inculpatory statement relating to drugs found in his motel room: "All this stuff is mine, they know nothing about it." The court further concluded that since Appellee was arrested shortly after 3:00 a.m., and was not arraigned until approximately 11:00 a.m., more than six hours had elapsed; therefore, the *Davenport* rule was violated and Appellee's statement is not admissible at trial. We disagree for the reasons that follow.

1. We assume jurisdiction of this case pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended by the Judiciary and Judicial Procedure Act of 1980, Oct. 5, P.L. 693, No. 142, § 402(a), 42 Pa.C.S. § 724. Under our decision in *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), the Commonwealth has a right of appeal from a suppression order, as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

2. In *Davenport*, we held that if the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial.

On March 8, 1984, at approximately 3:00 a.m., a burglar alarm in a room at the Airway Motor Lodge, Tinicum Township, Delaware County, was activated. Officers Jack J. Parker and Walter G. Fife of the Tinicum Township Police Department arrived on the scene within minutes of the alarm. The motel clerk advised Officer Parker that the television alarm in Room 122 had sounded. An investigation revealed that the television in Room 122 was missing.

Officers Parker and Fife separated and began a search of the motel. Officer Parker observed two men peeking out of a glass doorway. Believing the men were acting in a suspicious manner, he radioed Officer Fife and described his observations. Officer Parker entered the building adjacent to where he had observed the two men and again saw the two individuals peek out of the glass doorway. As Officer Parker approached, the two men exited the building close to where Officer Fife was standing.

Officer Fife stopped the two men and requested some identification, which they provided. The officer then asked if they were guests at the motel. The co-defendant replied in the affirmative. The officer repeated the question to the defendant. Defendant replied that he was a guest in the motel and that they were in the same room. Officer Fife asked to see the room key to confirm their status as guests. The co-defendant stated that his wife was in the room and that she had the key.

The co-defendant went willingly to Room 258 with Officer Fife while Appellee waited with Officer Parker. In response to the co-defendant's knock on the door, his wife opened the curtains. At this time, Officer Fife observed through the window a large plastic bag atop a scale. The door was opened and the officer given permission to enter. Upon entering, the officer observed white powder in the plastic bag. Officer Fife called down to Officer Parker, "Jack, you'd better come up here." At that time, Officer Parker told Appellee to come with him to the motel room. Appellee entered the room in front of the officer and exclaimed, "All this stuff is mine, they know nothing about

it." Appellee and the co-defendants were then placed under arrest for suspected illegal drug activity. A search of the room revealed assorted drugs and drug paraphernalia.

At approximately 3:30 a.m., Investigator Robert Lythgoe arrived on the scene and seized the evidence. Appellee and his co-defendants were then transported to police headquarters and advised of their *Miranda* rights. Processing of the Appellee was completed at approximately 6:00 to 7:00 a.m. Appellee was preliminarily arraigned at 11:00 a.m., that same morning.

After a preliminary hearing on April 4, 1984, Appellee was held for court on the charges of possession, possession with intent to deliver controlled substances, and conspiracy.

On June 4, 1984, Appellee filed a Motion to Suppress the statement made to the police at the motel. After receiving testimony from Officers Parker and Fife and Investigator Lythgoe on June 11, 1984, the suppression court granted Appellee's motion on August 13, 1984. The Commonwealth appealed. Superior Court, in a two-to-one decision, agreed with the findings of the suppression court and affirmed the Order of Suppression on July 5, 1985, 348 Pa.Super. 630, 510 A.2d 290. Judge Wieand dissented on grounds that "there was no causal connection between the delayed preliminary arraignment and the voluntary and unsolicited admission of ownership made by Appellee when controlled substances were found in his room." The Commonwealth filed a petition for allowance of appeal which we granted on May 8, 1986, so that we might have the opportunity to review and reconsider the rule adopted in *Commonwealth v. Davenport, supra.*

In this appeal the Commonwealth raises the following questions for our review: 1) whether the suppression court erred in its conclusion of law that the Appellee was under arrest at the time of his freely volunteered admission; and 2) whether the suppression court improperly employed a *per se* rule of exclusion of evidence to a violation of the *Davenport* "six hour rule."

Appellant first contends that the finding that Appellee was under arrest at the time of his freely volunteered

statement is not supported by the record and that "at most" Appellee was detained for a brief investigatory stop. It is Appellant's position that at the moment the Appellee made his unsolicited confession he had not been taken into custody so as to effectuate an arrest. Appellant also correctly notes, that if the Appellee was not under arrest at the time of his statement, the rule of *Davenport* is not applicable to this case.

■ Appellee, on the other hand, contends that the police had exercised control over his freedom from the moment of the initial stop and that he was not free to go at any time. This Court has utilized the following test for determining whether an arrest has occurred:

> We have defined an arrest as any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest.

*Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), citing *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). *See also, Commonwealth v. Haggerty,* 495 Pa. 612, 435 A.2d 174 (1981), and *Commonwealth v. Nelson,* 488 Pa. 148, 411 A.2d 740 (1980). An arrest may thus be effectuated without the actual use of force and without a formal statement of arrest. *Commonwealth v. Daniels,* 455 Pa. 552, 317 A.2d 237 (1974).

> The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized.

*Commonwealth v. Haggerty, supra,* 495 Pa. at 615, 435 A.2d at 175, citing *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974). We have also held that a police officer's subjective view that a defendant was not free to leave is of no moment absent an act indicating an intention to take the person into custody. *Commonwealth v. Holmes,* 482 Pa. 97, 393 A.2d 397 (1978).

In reviewing the rulings of a suppression court our initial task is to determine whether the factual findings are sup-

ported by the record. *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). "Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

In the instant case, the Appellee offered no testimony at the suppression hearing. The suppression court's determination that Appellee was under arrest when he accompanied Officer Parker to Room 258 was based on the testimony of the Commonwealth's witnesses. The suppression court found that this testimony established that: (a) Appellee had stated that he was a resident of Room 258; (b) following the discovery of the drugs, the officers had probable cause to arrest Appellee, (c) both officers assumed that Officer Parker was to bring Appellee to Room 258, following Officer Fife's call, (d) Officer Parker believed that Officer Fife had found the stolen television set or other evidence of crime; (e) Officer Parker testified that at that point Appellee was not free to leave, and (f) under *Commonwealth v. Lovette, supra*, the act of transporting Appellee to Room 258 without his consent constituted an arrest.

In *Lovette* the issue was whether placing the defendant in a police vehicle after a "pat down" search and transporting him to the scene of a burglary for identification by the victim constituted an arrest. We held:

> Under all of the circumstances, it is clear that the placing of appellant and his companions in the police vehicle for the purpose of transporting them to the scene of the offense, without their consent, constituted an arrest as that term has been defined under our cases.

*Id.* 498 Pa. at 672, 450 A.2d at 978.

Appellant attempts to distinguish *Lovette* from the instant case in that the police actions there went well-beyond what occurred here, and that the officers there had other options available to them. Here, Appellant argues, when Officer Fife called for Officer Parker to come upstairs a split

second decision had to be made as to whether to permit Appellee to leave or to continue the momentary detention "one flight up." Appellant contends that Appellee's act of walking up a flight of stairs is not sufficient to render a justifiable momentary detention into a full blown arrest. We do not agree. The uncontradicted testimony established that at the time Officer Parker was summoned upstairs, he believed that the stolen television had been discovered. Both officers testified that Appellee was not free to leave. Appellee was not requested, but told to come upstairs. Viewed in the light of the reasonable impression conveyed to Appellee, we conclude that this act would indicate to Appellee that the officer intended to subject Appellee to his will and control and take him into custody.

Since we conclude that there was an arrest, we now address Appellant's second contention that the suppression court improperly employed a *per se* rule of exclusion of evidence applied technically to a violation of the *Davenport* rule of prompt arraignment. The Appellant argues that the exclusion of Appellee's statement was an inappropriate and unnecessary sanction, as the statement was voluntary and not obtained in violation of his constitutional rights. The *Davenport* rule, briefly stated, provides that when an accused is not arraigned within six hours of arrest, any declaration obtained after arrest but before arraignment is not admissible at trial. *Id.* 471 Pa. at 286, 370 A.2d at 306.

The Pennsylvania Rules of Criminal Procedure require that an individual who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay. Pa.R.Crim.P. 122, 130.[3] Enforcement of these rules has long been of concern to this Court. In *Davenport*, we stated that the purpose of the prompt arraignment requirement is to insure that the accused is promptly afforded the full panoply of rights and protections

---

**3.** Rule 122 provides:

**Procedure in Court Cases When Warrant of Arrest Is Executed Within Judicial District of Issuance**

When a defendant has been arrested in a court case, with a warrant, within the judicial district where the warrant of arrest was

guaranteed by our Constitution as embodied in Pa.R. Crim.P. 140.[4]

Rule 140 provides that the court shall inform the accused of the charges against him, his right to counsel, his right to bail and his right to a preliminary hearing. Thus, the requirement of a prompt arraignment serves to protect the accused's right to know "the nature and cause of the accusation against him," Pa. Const. art. I, § 9, his right to counsel, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const. Amends. VI, XIV; Pa. Const. art. I, § 9, and his right to reasonable bail. Pa. Const. art. I, § 14. It also protects the accused's right to be free from unreasonable seizure of his person. See *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); U.S. Const. amends. IV, XIV; Pa. Const. art. I, § 8.

*Id.*, 471 Pa. at 283, 370 A.2d at 304.

We first addressed the problem in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), wherein we held

issued, the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.

Rule 130 provides in relevant part:

**Procedure in Court Cases Initiated by Arrest Without Warrant**

    (a) Except as provided in paragraphs (b) and (c), when a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay....

4. Rule 140. *Preliminary Arraignment*

    (a) At the preliminary arraignment, the issuing authority shall not question the defendant respecting the offense charged, but shall forthwith deliver a copy of the complaint to him. The issuing authority shall also inform the defendant:

        (1) of his right to secure counsel of his choice and his right to assigned counsel in accordance with Rule 316;

        (2) of his right to have a preliminary hearing; and

        (3) if the offense is bailable, of the amount of bail demanded and the types acceptable as provided in these rules.

    (b) If the defendant desires to post bail, secure counsel or notify others of his arrest, he shall be held but not be committed to jail until he has been given immediate and reasonable opportunity to do so.

    (c) If bail is set, the issuing authority shall accept bail at any time prior to the return of the transcript to the court....

that evidence obtained during unnecessary delay between arrest and arraignment would be inadmissible at trial, except for evidence which has no relationship to the delay whatsoever.[5] In *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974), this Court articulated a three-part test to determine if evidence obtained during a prearraignment delay would be suppressed. "The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." *Id.*, 455 Pa. at 572, 319 A.2d at 420. A primary evil which prompted the development of the exclusionary rule was a recognition of the coercive environment that can be established by protracted custodial questioning. However, "[t]his rule was adopted not simply to guard against the coercive influence of custodial interrogation, but to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Davenport*, 471 Pa. at 284, 370 A.2d at 305.

> While the *Futch* formula was not designed to terminate police interrogation, it was intended to interrupt it after a reasonable period of time to allow the suspect to be advised of his custodial rights by an impartial judicial officer, as opposed to police officials, and in appropriate cases to` establish the conditions of his release pending trial.

*Commonwealth v. Jenkins*, 500 Pa. 144, 148, 454 A.2d 1004, 1006 (1982).

The *Futch* rule was deliberately made flexible to provide the opportunity for a court to exclude only that evidence which was clearly tainted by the coercive atmosphere of the custodial interrogation. While this flexibili-

5. *See also, Commonwealth v. Smith*, 487 Pa. 626, 410 A.2d 787 (1980); *Commonwealth v. McGeachy*, 487 Pa. 25, 407 A.2d 1300 (1979); *Commonwealth v. Morton*, 475 Pa. 374, 380 A.2d 769 (1977); *Commonwealth v. Bey*, 462 Pa. 533, 341 A.2d 907 (1975); *Commonwealth v. Barilak*, 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973). These cases show the development of the exclusionary rule of *Futch, supra*.

ty was salutary in providing our trial courts the leeway to separate evidence tainted by that coercive influence from that which resulted from volunteered self compelled utterances, *Commonwealth v. Rowe,* [459 Pa. 163, 327 A.2d 358 (1974)] *supra;* cf. *Commonwealth v. Penn,* [497 Pa. 232, 439 A.2d 1154 (1982)] *supra; Commonwealth v. Smith,* [487 Pa. 626, 410 A.2d 787 (1980)] *supra; Commonwealth v. Van Cliff,* [483 Pa. 576, 397 A.2d 1173 (1979] *supra,* experience proved it to be difficult for law enforcement officials to administer.

*Commonwealth v. Jenkins, supra,* 500 Pa. at 149, 454 A.2d at 1006–07 (1982). It is important to note also that "[f]rom the outset we stressed that it was not intended to be a mechanical rule to enforce compliance with our procedural rules by insisting upon a reasonable relationship between the delay and the evidence sought to be excluded. (Citations omitted)" *Jenkins, supra,* 500 Pa. at 148, 454 A.2d at 1006.

Our adoption of the more rigid standard of *Davenport* was an attempt to assure more certain and even-handed application of the prompt arraignment requirement, and provide greater guidance to trial courts and law enforcement authorities. It was thought that a rule based on the length of delay between arrest and arraignment would simplify the task of determining the admissibility of statements taken before arraignment and thereby further judicial economy. Moreover, the rule would better serve to deter violations of the prompt arraignment requirement and ensure the accused of the protections it affords. *Id.* 471 Pa. at 287, 370 A.2d 306. While we recognized that it is difficult to fix any particular time limit, we concluded that the six hour rule provided a workable rule which could be readily complied with absent exigent circumstances. *Id.,* 471 Pa. at 286, n. 7, 370 A.2d 306 n. 7. Our experience with the per se application of the rule has proven to the contrary. The rule has been applied on a mechanical basis to violations which bear no relationship to the statement obtained and has shielded the guilty for no reason relevant to the

individual circumstances of their case. *See, e.g., Commonwealth v. Bennett,* 498 Pa. 656, 450 A.2d 970 (1982) (Mr. Justice McDermott concurring), (two minute delay beyond the six hour period); *Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980) (Mr. Justice Larsen dissenting), (ten minute delay beyond the six hour period).

■ This Court never intended that the rule of *Davenport* be rigidly applied in all situations without regard to the purpose of the rule and the evils sought to be avoided by its application. "At no time did we wish to cut off freely volunteered confessions of guilt, nor did we wish to impede legitimate law enforcement efforts. The primary purpose sought to be obtained was to discourage the obtaining of incriminatory information through coercive means," *Jenkins, supra,* 500 Pa. at 150, 454 A.2d at 1007, and it was felt that the mere passage of time while under arrest could have a coercive effect upon a defendant.

In establishing the six hour rule of *Davenport,* we did not abandon the requirement that the incriminating evidence sought to be suppressed be reasonably related to the unnecessary delay, as evidenced by the exigent circumstances exception to the rule. See, *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984); *Commonwealth v. Keasley,* 501 Pa. 461, 462 A.2d 216 (1983); *Commonwealth v. Jenkins, supra.* Moreover, implicit in our holding was a determination that a delay of six hours between arrest and arraignment is an acceptable period of time to accommodate conflicting interests without creating such a coercive effect so as to violate the rights of an accused. Therefore, the focus should be upon *when* the statement was obtained, i.e., within or beyond the six hour period. If the statement is obtained within the six hour period, absent coercion or other illegality, it is not obtained in violation of the rights of an accused and should be admissible. In keeping with the underlying objectives of the rule, only statements obtained after the six hour period has run should be suppressed on the basis of *Davenport.*

In recent decisions, several members of this Court have expressed dissatisfaction with the *Davenport* rule as it has been applied, and have recommended its abandonment.[6] However, the underlying purposes of the rule would not be served by the elimination of an objective standard with which to measure unnecessary delay, and would lead to the same problems that arose under the *Futch* and *Williams* formulations. The rule must accommodate conflicting interests and we must make every effort to protect the rights of the accused on the one hand, and avoid the mechanical application of the rule in a manner that works to exclude probative, reliable evidence despite the absence of police abuse.

In the instant case, as Judge Wieand noted in his dissenting opinion, there is absolutely no causal connection between the voluntary statement made by Appellee minutes after his arrest and the subsequent delay in his arraignment by some one and one-half to two hours beyond the six hour *Davenport* rule. Moreover, the statement was not the product of interrogation, much less coercion. The subsequent illegality of Appellee's detention after the voluntary statement does not retroactively change the circumstances under which he made the disclosure. And, Appellee has made no claim that the statement was elicited through illegality. The sole basis of Appellee's suppression claim is that of technicality. He was not arraigned within six hours

6. See, *Commonwealth v. Blady*, 492 Pa. 285, 424 A.2d 864 (1980), *rearg. denied*, February 18, 1982, Mr. Justice Larsen joined by Mr. Justice Flaherty referred to the *Davenport* rule as the "quintessential illustration of mechanical jurisprudence" in expressing their dissatisfaction with the "rote application of the *Davenport* formula" at the "expense of justice." Other members of the Court noted their displeasure with the "iron rule" in *Commonwealth v. Bennett*, 498 Pa. 656, 450 A.2d 970 (1982) (Mr. Justice Flaherty, concurring opinion, joined by Mr. Justice Hutchinson; Mr. Justice McDermott, concurring opinion, joined by Mr. Justice Larsen) and *Commonwealth v. Jenkins*, 500 Pa. 144, 454 A.2d 1004 (1982) (Mr. Justice McDermott, concurring opinion). In the former case, Mr. Justice McDermott wrote: "we have invoked the rule to prevent one form of illegality, an illegality that can be monitored without subjecting our judicial system to the sorest criticism, when the guilty go free for no reason except an unnecessary and inapplicable rule." *Bennett*, 498 Pa. at 660, 450 A.2d at 972.

of his arrest and, therefore, he argues that his statement was properly suppressed. In effect he is saying that since the police violated his prompt arraignment rights, the Commonwealth should be sanctioned by denying it the use of properly obtained evidence. We cannot impose such a price upon the Commonwealth. Further, in light of our determination that statements not obtained through illegality within the six hour period are not in violation of the rights of the accused, and are admissible, the *Davenport* rule is modified to the extent it is inconsistent with this opinion. This new rule shall apply retroactively to all cases pending on direct review or not yet final.

Accordingly, the Order of Superior Court affirming the Order of the Court of Common Pleas of Delaware County granting Appellee's Motion to Suppress is reversed and the case is remanded to the Court of Common Pleas of Delaware County for trial.

FLAHERTY and McDERMOTT, JJ., file concurring opinions.

NIX, C.J., files a dissenting opinion, joined by ZAPPALA, J.

HUTCHINSON, J., files a dissenting opinion.

FLAHERTY, Justice, concurring.

I concur in the result as it is clear that appellee's statement was voluntary and not the product of unnecessary delay between arrest and arraignment. Further, I join in that portion of the opinion authored by Mr. Justice Papadakos announcing that statements given within six hours of arrest should not be suppressed merely because arraignment occurs more than six hours after arrest, as those statements ought not be presumed to be the product of unnecessary delay between arrest and arraignment.

While I am in complete agreement that our rule which requires that persons accused of crimes be afforded a prompt preliminary arraignment, *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), is a good one, I

write separately to express my continued opposition to the per se application of *Davenport* to exclude all statements made more than six hours after arrest. Rather, I would afford the Commonwealth the opportunity, and impose on the Commonwealth the burden, of proving that the delay was not unnecessary when the delay between arrest and arraignment exceeds six hours. See my authored concurring opinion filed in *Commonwealth v. Bennett*, 498 Pa. 656, 658, 450 A.2d 970, 971 (1982).

McDERMOTT, Justice, concurring.

I concur in the result for the reasons stated in my Concurring Opinion in *Commonwealth v. Jenkins*, 500 Pa. 144, 151, 454 A.2d 1004, 1007 (1982).

NIX, Chief Justice, dissenting.

In *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), this Court explained that the purpose of its already-existent rule excluding evidence obtained during unnecessary prearraignment delay was *"not simply to guard against the coercive influence of custodial interrogation, but to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." Id.*, 471 Pa. at 284, 370 A.2d at 305 (emphasis added). The "six-hour" rule promulgated in *Davenport* was designed to effectuate those underlying purposes in a way that was both certain and workable. Although the majority opinion in the instant case recognizes the dual purposes of the rule excluding evidence obtained during unnecessary delay, the majority proposes a drastic abridgment of the *Davenport* rule that will severely undermine the second of those essential purposes. If, as the majority opinion proposes, only statements obtained *after* the lapse of the six-hour period should be subject to exclusion, then once the police obtain a statement prior to the end of that period, there will no longer be a compulsion on their part to have the accused arraigned in a timely manner. The sanction for unnecessary delay will be gone. If an

accused's right to arraignment without unnecessary delay is to be ensured, as we have said it must, then the sanction for violation of that right must continue to be the exclusion of evidence, regardless of what point during the delay the evidence is obtained. The police must be kept cognizant that even though they have obtained a statement before the lapse of the prescribed six-hour period, continued unnecessary delay beyond that period will result in the exclusion of even that evidence.

The "six-hour" rule set forth in *Commonwealth v. Davenport* has had a salutary effect on the administration of criminal justice in this state, in that the rule, while being sensitive to essential rights of an accused, also provides law enforcement officials and the court's with a clear and manageable guideline.

I, therefore, dissent.

ZAPPALA, J., joins in this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I dissent. The Commonwealth enjoys a right to appeal an adverse suppression order only upon a good faith certification by the Commonwealth that the suppression order terminates or substantially handicaps its prosecution. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). *See also Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). My review of the record in this case reveals that the Commonwealth failed to make *any* certification as to the impact of the suppression order upon its case. Accordingly, I would quash this appeal and would not reach the *Davenport* issue. The failure to heed the certification requirement of *Dugger* will only add to Superior Court's already congested docket unwarranted Commonwealth appeals of suppression orders. Moreover, I do not believe that the Commonwealth, in *good faith*, could possibly certify that the exclusion of appellee's inculpatory statement alone either terminates or substantially handicaps its prosecution in light of the wealth of physical evidence available to the Commonwealth. On the record before us this is a

purely interlocutory appeal. I see no need to engage our limited appellate resources in deciding it.