## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CeeMee, Inc.,                                    :
Acadia Insurance Company/                        :
W.R. Berkley Corporation/                        :
Berkley Mid-Atlantic Group,                      :
                   Petitioners                     :
                               :
          v.                               :
                               :
Workers' Compensation                            :
Appeal Board (Sowers),                           :    No. 1003 C.D. 2014
               Respondent    :    Submitted: December 12, 2014


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: September 23, 2015


        CeeMee, Inc. and Acadia Insurance Company/W.R. Berkley Corporation/Berkley Mid-Atlantic Group (collectively, Employer)[1] petition this Court for review of the Workers' Compensation Appeal Board's (Board) May 19, 2014 order affirming the Workers' Compensation Judge's (WCJ) decision granting Donald Sowers' (Claimant) claim petition and dismissing Employer's joinder petitions.  Employer presents three issues for this Court's review: (1) whether the WCJ erred in granting Claimant's claim petition; (2) whether the WCJ erred in finding that Claimant was employed by Employer on May 25, 2006; and (3) whether

---

[1] The petition for review provides: "The Petitioners are the **Employer, CeeMee**, Inc., . . . and their workers' compensation Insurance carrier/TPA, Acadia Insurance Company / W.R. Berkley Corporation / Berkley Mid-Atlantic Group, . . . ."  Petition for Review at 2 (emphasis added).

the WCJ erred in calculating Claimant's average weekly wage. After review, we affirm.

On May 25, 2006, while attending a trade show in Las Vegas on behalf of Employer, Claimant was moving a drum set weighing between 75 and 100 pounds when he felt a sensation in his right eye. The incident was witnessed by Claimant's co-worker, Gabrielle Santulli. Claimant continued to work and, on his return from Las Vegas, he advised Employer's President Donald Procyk about the incident. Claimant initially sought medical treatment for his eye from his family physician who referred him to an ophthalmologist. After a failed surgery to reattach Claimant's retina, he came under the care of Allen Ho, M.D. (Dr. Ho) at Wills Eye Hospital. On September 22, 2008, following a series of surgical attempts to permanently reattach the retina, Dr. Ho advised Claimant that nothing further could be done and that Claimant had lost sight in his right eye for all intents and purposes.

On June 30, 2010, Claimant filed a claim petition alleging that he injured his right eye on May 25, 2006 during the course and scope of his employment with Employer, which subsequently led to the loss of vision in that eye. The parties agreed to bifurcate certain issues. By April 7, 2011 interlocutory decision and order, the WCJ denied Employer's affirmative defense of the statute of limitations, and determined that if Claimant is successful on his claim petition, his average weekly wage would be based on his earnings in 2008 when he was advised that he had lost vision in his right eye. On April 25, 2011, Employer filed three joinder petitions alleging that Claimant was employed by one of the joined parties. On October 17, 2011, Employer filed an additional joinder petition alleging that CeeLite, Inc. was Claimant's employer at the time of his work injury. By January 27, 2012 decision and order, the WCJ granted Claimant's claim petition and awarded Claimant benefits for a specific loss commencing on September 22, 2008 and continuing for a period of 285 weeks and a ten-week healing period. The WCJ dismissed Employer's joinder

2

petitions.  Employer appealed to the Board.  On May 19, 2014, the Board affirmed the WCJ's granting of Claimant's claim petition and dismissal of Employer's joinder petitions, but reversed the WCJ's granting of a ten-week healing period.  Employer appealed to this Court.[2]

Employer first argues that Dr. Ho's medical opinion was equivocal and speculative and, thus, not sufficient to support a workers' compensation (WC) benefit award.  Specifically, Employer contends that because Dr. Ho used words such as "possibly" and "could have been," his causation testimony was equivocal.

> The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review.  In such cases, **we review the testimony as a whole and may not base our analysis on a few words taken out of context.**  'Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt.'  *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg [Coll.]),* 794 A.2d 443, 449 (Pa.[]Cmwlth.[]2002).  **'[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists**.'  *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.),* 29 A.3d 50, 58 (Pa.[]Cmwlth.[]2011).

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (citations omitted; emphasis added).  Employer asserts that "[i]n the present[ case,] Dr. Ho **never** expressed an unequivocal opinion as to causation."  Employer Br. at 12 (emphasis in original).  We disagree.

During Dr. Ho's deposition, the following exchange occurred between Dr. Ho and Claimant's counsel:

---

[2] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated."  *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 744 n.1 (Pa. Cmwlth. 2010).

3

Q       Okay. And at the time that you first saw [Claimant] going back to 2006, were you able to formulate an opinion -- diagnosis, again, rendered within a reasonable degree of medical certainty as to the condition of his right eye at that time?

A       Yes.

Q       And what was that?

A       He had a retinal tear and retinoschisis associated with it.

Q       Okay. And, again, within a reasonable degree of medical certainty were you able to formulate an opinion as to the cause of that diagnosis both at the time you first saw him in 2006 and presently?

A       Yes.

Q       And what was that?

A       **I think his events started with the lifting of the heavy equipment at the trade show in Las Vegas.**

Reproduced Record (R.R.) at 485a-486a (emphasis added).

In addition, Dr. Ho's February 25, 2009 letter expressly states in relevant part: "[Claimant] has been a patient of mine since April 2007. Upon his initial consultation he was found to have a macula-off retinal detachment in his right eye. **The detachment occurred while [Claimant] was moving some heavy equipment for work at a [t]rade [s]how in Las Vegas.**" R.R. at 538a (emphasis added). At his deposition, Dr. Ho was questioned regarding the February 25, 2009 letter as follows:

Q       If I can just ask you, Doctor, I'm just going to go back to Exhibit-11 for one minute.

Doctor, Exhibit-11, which we went over earlier, is your note of February [2]5th, 2009 and in the first paragraph you stated the detachment occurred while [Claimant] was moving some heavy equipment for work at a trade show in Las Vegas.

Does that, in fact, remain your opinion?

4

A       I need to see my notes, my chart. He, I believe, had a retinal tear and subsequently was found to have a retinal detachment.

Q       So assuming he had a retinal tear at that time, would it be your opinion that he had a -- that the retinal tear was occurred [sic] when he was moving heavy equipment at the trade show in Las Vegas?

A       **Based on his history and my exam, yeah, I would say so.**

Q       And have all of the opinions you've provided with us today been provided within a reasonable degree of medical certainty?

A       Yes.

R.R. at 500a-501a (emphasis added). Dr. Ho, after providing foundation for his testimony, stated more than once that, in his professional opinion, he believes or thinks that Claimant's heavy lifting at the trade show in Las Vegas caused Claimant's injury. Accordingly, we find Dr. Ho's testimony unequivocal.

Employer next contends that Claimant was not its employee at the time of his injury because Claimant was working for CeeLite, LLC when the injury occurred. However, Employer stipulated at the WCJ hearing that Employer and CeeLite, LLC were one and the same. Specifically, during the direct examination of Claimant, the WCJ interrupted and the following exchange occurred:

Q.      Who's your present employer?

A.      Ceelite Technology.

Q.      Can you explain for the judge what Ceelite Technology does in general terms.

A.      We manufacture flat light bulbs.

JUDGE BURMAN:   Is that the same as Cee[M]ee or is that a different company?

THE WITNESS:   They were a combination. They merged.

5

> JUDGE BURMAN: Oh, okay. **So it's the same employer?**
>
> THE WITNESS: Yes.
>
> MR. MAKARA [Claimant's counsel]: That's my understanding. I meant to clarify that with Mr. Casey.
>
> MR. CASEY [Employer's counsel]: **We'll so stipulate.**

R.R. at 143a-144a (emphasis added). It is axiomatic that "[a] counsel's admissions and representations are binding on a client." *Radhames v. Tax Review Bd*., 994 A.2d 1170, 1177 n.14 (Pa. Cmwlth. 2010). Moreover, "[i]t is clear that [Employer] may not, absent proof of justifying circumstances, simply discard its stipulation[] and have a second opportunity to carry its burden of proof." *Commonwealth v. Daniels*, 368 A.2d 1279, 1283 (Pa. 1975).

In its brief, Employer asserts that notwithstanding the stipulation "CeeLite, LLC would still be liable as [Claimant's] [e]mployer because two exceptions to the rule on successor liability apply to the present case." Employer Br. at 16. However, this argument presumes Employer stipulated that Employer and CeeLite, LLC merged. To the contrary, Claimant testified there was a merger, but the WCJ asked counsel whether it was "**the same employer,**" to which Claimant's counsel replied: "That's my understanding[,]" and Employer's counsel responded: "We'll so stipulate." R.R. at 144a (emphasis added). Accordingly, Employer's argument to the contrary cannot stand.

Lastly, Employer argues that the WCJ erred in calculating Claimant's average weekly wage. Specifically, Employer contends that Claimant's weekly wage should be based on his wages during the year preceding his injury - 2006 – which would be zero. We disagree.

6

We recognize that Section 309 of the Pennsylvania Workers' Compensation Act (Act)[3] states in relevant part:

> Wherever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employe[e], ascertained as follows:
>
> (a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the average weekly wage;
>
> (b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;
>
> (c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;
>
> (d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

77 P.S. § 582. However, this action involves specific loss under Section 306(c)(7) of the Act, 77 P.S. § 513.

> The Act defines wages in terms of a claimant's weekly pay 'at the time of the injury.' 77 P.S. § 582. This Court has repeatedly held that 'in specific loss cases under Section 306(c) of the Act, . . . the date of the injury is the date when the claimant is notified by a doctor of the loss of use of the member or faculty for 'all practical intents and purposes' and that the injury is job[-]related in nature.' *Roadway Express, Inc. v. Workmen's [Comp.] Appeal [Bd.]*, 708 A.2d 132 (Pa.[]Cmwlth.[]1998) (citing *Eddy v. Workmen's [Comp.] Appeal [Bd.] (Bell Transit, Inc.)*, . . . 568 A.2d 279 ([Pa. Cmwlth.] 1989)).

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.

*Lancaster Gen. Hosp. v. Workers' Comp. Appeal Bd. (Weber-Brown)*, 987 A.2d 174, 180 (Pa. Cmwlth. 2009), *aff'd*, 47 A.3d 831 (Pa. 2012).

Employer asserts that this action is not a specific loss case because Claimant suffered a retinal detachment on May 26, 2006,[4] which diagnosis remained the same through his final surgery on September 22, 2008 and, thus, Claimant's permanent vision loss began on May 26, 2006. However, the record evidence does not support this conclusion. The May 26, 2006 injury did not cause the lack of vision, but rather the "series of retinal detachment -- retinal reattachment surgeries[,]" that culminated with Claimant's last surgery on September 22, 2008, caused his permanent vision loss. R.R. at 487a.

Dr. Ho testified that Claimant had lost vision in his right eye for all practical intents and purposes. *See* R.R. at 487a. In addition, Dr. Ho and Claimant both testified that Claimant's loss of vision became permanent as of Claimant's last surgery when Dr. Ho determined that he could no longer operate. *See* R.R. at 158a, 487a. Finally, it is undisputed that Claimant's last surgery occurred on September 22, 2008. *See* R.R. at 535a. Accordingly, we discern no error in the WCJ's calculation of Claimant's weekly wage.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge McCullough did not participate in the decision in this matter.

---

[4] Employer uses May 26, 2006 as Claimant's date of alleged injury in its brief; however, the Claimant's claim petition states May 25, 2006 as the date of injury.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CeeMee, Inc.,                                        :
Acadia Insurance Company/                            :
W.R. Berkley Corporation/                            :
Berkley Mid-Atlantic Group,                          :
                              Petitioners    :
                                            :
                v.                                   :
                                            :
Workers' Compensation                                :
Appeal Board (Sowers),                               :    No. 1003 C.D. 2014
                           Respondent     :

## O R D E R

AND NOW, this 23rd day of September, 2015, the Workers' Compensation Appeal Board's May 19, 2014 order is affirmed.

_____

ANNE E. COVEY, Judge