**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Warren McGLONE, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1998.
Filed Sept. 8, 1998.

Edward H. Wiley, Bala Cynwyd, for appellant.

Karen A. Brancheau, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, ORIE MELVIN and BECK, JJ.

BECK, Judge:

In this appeal from the judgment of sentence for second degree murder and related offenses, we consider, *inter alia*, whether and to what extent the statement of a non-testifying co-defendant may be redacted to allow its admission at a joint trial. After careful consideration of *Gray v. Maryland,* — U.S. ——, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), we affirm.

On the morning of January 2, 1996, Philadelphia Police Officer Lauretha Vaird responded to a radio call of a bank robbery in progress. Upon entering the bank, Officer Vaird interrupted the crime and was shot in the abdomen by one of the robbers. She later died of her wounds.

Three men planned and executed the fatal robbery. Mark Canty and Christopher Roney entered the bank armed with guns while appellant Warren McGlone waited for them in the getaway vehicle, a stolen mini-van. After shooting Officer Vaird and attempting to shoot another officer, Roney jumped into the van and appellant sped away. Canty fled on foot. Both men dropped their weapons before fleeing.

By tracing ownership records of the guns found at the scene, police identified appellant as a suspect. They approached appellant outside his home and he agreed to accompany them to headquarters where he later made a full confession. Appellant's wife told police that appellant met with Canty and Roney shortly after the incident, at which time the men watched televised reports of the robbery/murder and discussed their escape.

Other evidence presented at trial established that one of the guns used in the crime was purchased by a woman for appellant. In addition, a citizen who observed the van fleeing from the bank identified appellant as the driver.

On appeal appellant raises three issues. The first two involve the admission of his own statement. He claims that the confession was "the direct result of an illegal arrest" and/or "obtained illegally during custodial interrogation."

Appellant relies primarily on allegations of police misconduct to support his claims. He argues that he was arrested in his home without a warrant, that he was not given *Miranda*[1] warnings, that he requested but was refused an attorney, that he was deceived by police and that he was threatened with physical harm. Prior to trial, the suppression court heard all of these allegations, as well as the version of events presented by the police. The court found appellant's story not credible. Specifically, the court found that appellant was arrested outside his home, that he was informed of his *Miranda* rights, that no police deception occurred and that appellant's statement to police was voluntarily given.

■ In addition, the court found that the police had probable cause to question and detain appellant due to the connection between him and one of the guns found at the scene and information from federal authorities that appellant was a suspect in other armed bank robberies. Finally, the court found no violation of the "six hour rule" which our supreme court set forth in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) and further refined in *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987).[2]

■ Upon review of the record and the trial court opinion, we are confident that the suppression court's findings of fact are supported by the record and its legal conclusions are proper. *Commonwealth v. Lopez*, 415 Pa.Super. 252, 254–55, 609 A.2d 177, 178, *appeal denied*, 533 Pa. 598, 617 A.2d 1273 (1992). The manner in which appellant was apprehended by police and the circumstances of his custody and interrogation were legitimate under the facts as found by the court.

Further, the court's credibility determinations are not subject to reevaluation by this court. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 89–90, 666 A.2d 323, 325 (1995). In sum, we find no error by the trial court in denying appellant's motion to suppress his statement to police.

Appellant's third claim concerns the admission of his co-defendant's statement. Appellant asserts that the prosecution's use of Mark Canty's statement at trial denied him his sixth amendment right to confront witnesses against him. He insists that this could have been remedied only by severing his case from Canty's, a request that he made prior to trial, but which the court rejected.

In a pre-trial motion to sever his case from his co-defendant's case, appellant argued that admission of Canty's statement was prejudicial. The court denied the motion to sever and the parties then set about redacting the statement to avoid prejudice to appellant.

The trial court recounts in its opinion:

Prior to the admission of both the statements made by co-defendant Canty and [appellant], this Court conducted two separate hearings ... to determine the best method to redact these statements. The parties eventually reached an agreement as to the final redacted version of both statements, where portions of each statement inculpating either co-defendant were omitted and specific names substituted with "other persons" or "person" when necessary to preserve the integrity of each statement.... The final versions of each statement only implicated the confessor of the statement and mentioned the confessor's role in the criminal acts....

Trial Ct. Op. at 12–13.

The Commonwealth argues that because appellant did not renew his motion to sever after his statement was redacted or when the statement was admitted, he has waived his

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Because his preliminary arraignment did not take place within six hours of his arrest, appellant claimed a violation of *Davenport* and sought

suppression on that basis. However, since his statement was given prior to the six hour period, the court properly rejected the request. *Duncan*, 514 Pa. at 406–08, 525 A.2d at 1183.

claim. This is technically correct. *Commonwealth v. Johnson*, 368 Pa.Super. 427, 435–36, 534 A.2d 511, 515 (1987), *appeal denied*, 520 Pa. 587, 551 A.2d 214 (1988). However, in arguing for severance prior to trial, appellant's counsel focused primarily on the admission of Canty's statement and asserted that, despite the availability of redaction, the danger of prejudice remained. The court ultimately denied the motion to sever, as well as the motions to suppress both men's statements, and later led the parties through the redaction process. In light of counsel's pretrial position, we decline to find waiver and instead will address appellant's claim on its merits.

Our task then is to determine whether the admission of Canty's redacted statement violated appellant's constitutional rights.

The primary basis for such a claim was first recognized by the United States Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, two co-defendants were tried jointly and neither testified on his own behalf. The statement of one, implicating himself and his co-defendant, was presented to the jury. In the statement, the co-defendant specifically named Bruton. Although the trial court instructed the jury to consider the statement only against the defendant who made it, the Supreme Court held that admission of the statement violated Bruton's constitutional rights. This was so, reasoned the Court, because the co-defendant did not testify at trial and, therefore, his allegations against Bruton were not subject to cross-examination. Admission of the statement constituted a violation of Bruton's sixth amendment right to confront witnesses against him. *Id.*

Nearly twenty years later, the Supreme Court revisited the *"Bruton* rule" in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). There, in a joint trial, the confession of a non-testifying co-defendant was redacted. The issue was whether the redacted confession was sufficient to protect the sixth amendment rights of the other co-defendant, Clarissa Marsh. The statement was redacted "so as to 'omit all reference' to [Marsh] ... 'indeed, to omit

all indication that anyone other than ... [the co-defendant] and a third person had 'participated in the crime.' " *Id.* at 203, 107 S.Ct. 1702. The *Richardson* court recognized that although the statement did not on its face incriminate Marsh, the substance of the confession became incriminating to her when linked with evidence introduced later at trial. Despite this, the Supreme Court found no violation of the *Bruton* rule. The Court held:

> [T]he Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.

*Id.* at 211, 107 S.Ct. 1702.

*Richardson* explicitly left open the issue of whether confrontation clause interests are protected when, in a redacted statement, a co-defendant's name is replaced with a symbol or a neutral pronoun. However, in the wake of *Bruton* and *Richardson*, this court routinely approved the use of statements redacted in this manner as long as the statement was not "powerfully incriminating" or lent "substantial, perhaps critical, weight" to the prosecution's case. *See Commonwealth v. Rawls*, 276 Pa.Super. 89, 97–99, 419 A.2d 109, 113 (1980) (where redacted statement on its face does not incriminate defendant, admission proper), *appeal dismissed*, 499 Pa. 267, 452 A.2d 1347 (1982). *See also Commonwealth v. Miles*, 545 Pa. 500, 681 A.2d 1295 (1996) (use of term "X" in place of defendant's name permissible in light of limiting instruction); *Commonwealth v. Presbury*, 445 Pa.Super. 362, 665 A.2d 825 (1995) ("other guy" reference in redacted confession did not render confession inadmissible), *appeal denied*, 544 Pa. 627, 675 A.2d 1246 (1996); *Commonwealth v. Pirela*, 398 Pa.Super. 76, 580 A.2d 848 (1990) (use of "X" proper particularly since trial judge was fact finder), *appeal denied*, 527 Pa. 672, 594 A.2d 658 (1991); *Commonwealth v. Hess*, 378 Pa.Super. 221, 548 A.2d 582 (1988) (replacement of defendant's name with term "other person" acceptable), *appeal denied*, 522 Pa. 618, 563 A.2d 887 (1989).

■ With respect to the extent of the redaction in light of other evidence presented at trial, the rule in the Commonwealth was clear: "contextual inculpation" did not render a redacted statement inadmissible, that is, where the redacted statement became incriminating only when considered in light of other evidence presented at trial, its admission was not barred. *Presbury, supra.*

■ In further refining the rule, our supreme court held that a harmless error analysis is proper when considering a *Bruton* claim. Therefore, even if a redacted confession could be deemed a *Bruton* violation, its admission may be harmless if other evidence, particularly a confession by the defendant himself, overwhelmingly establishes the defendant's guilt. *See Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992) (admission of redacted confession that used term "other guy," even if *Bruton* violation, was harmless error since defendant's own interlocking confession properly admitted). *See also Miles, supra* (assuming *Bruton* violation, overwhelming evidence of guilt, including confession by defendant, made error harmless).

On the day before appellant's case was argued before this court, the United States Supreme Court again confronted the *Bruton* issue. In *Gray v. Maryland*, —— U.S. ——, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the Court was faced with a redacted confession that the petitioner claimed violated his sixth amendment rights.

Kevin Gray, standing trial with two co-defendants in the beating death of another man, argued that the admission of one of the co-defendant's confession was precluded under *Bruton* as well as *Richardson*. This was so, Gray argued, because the manner of redaction was insufficient to protect his constitutional rights. The Court summarized the error as follows:

> The trial judge, after denying Gray's motion for a separate trial, permitted the State to introduce [co-defendant] Bell's confession into evidence at trial. But the judge ordered the confession redacted. Consequently, the police detective who read the confession into evidence said the word "deleted" or "deletion" whenever Gray's name ... [or that of his other co-defendant] appeared. Immediately after the police detective read the redacted confession to the jury, the prosecutor asked, "after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?" The officer responded, "That's correct." The State also introduced into evidence a written copy of the confession with those two names omitted, leaving in their places blank white spaces separated by commas.

*Id.* at ——, 118 S.Ct. at 1153 (citations omitted).

The *Gray* court acknowledged that the case before it did not present a pure *Bruton* issue in that the confession did not refer to Gray by name. Nor was the case exactly like *Richardson* wherein the redacted statement omitted all reference to the defendant. Highlighting the differences between *Bruton* and *Richardson*, the Court observed:

> The [*Richardson*] Court distinguished [the] confession in *Bruton* as a confession that was "incriminating on its face," and which had "expressly implicated" Bruton. By contrast, ... [the confession in *Richardson*] amounted to "evidence requiring linkage" in that it "became incriminating in respect to ... [the defendant] only when linked with evidence introduced later at trial."

*Id.* at ——, 118 S.Ct. at 1154 (citations omitted).

The *Gray* Court conceded that the confession before it was not facially incriminating and instead required the jury to infer a connection between the term "deleted" and the defendant. Still, the Court reasoned, the mere necessity of an inference, however slight, did not automatically take the statement outside *Bruton*'s scope and place it within *Richardson*'s.

> [I]nference pure and simple cannot make the critical difference.... *Richardson* must depend in significant part upon the kind of, not the simple fact of, inference. *Richardson*'s inferences involved statements that did not refer directly to the defendant himself and which became incriminating "only when linked with evi-

dence introduced later at trial." The inferences at issue here involved statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial.

*Id.* at ——, 118 S.Ct. at 1152 (citations omitted).

In attempting to show how the statement in *Gray* could have been redacted in a proper manner, the Court stated:

> Consider as an example a portion of the confession before us: The witness who read the confession told the jury that the confession (among other things) said,
>
>> Question: Who was in the group that beat Stacey?
>>
>> Answer: Me, deleted, deleted, and a few other guys.
>
> Why could the witness not, instead, have said:
>
>> Question: Who was in the group that beat Stacey?
>>
>> Answer: Me and a few other guys.

*Id.* at ——, 118 S.Ct. at 1157.

Appellant does not argue that Mark Canty's redacted statement included blanks, symbols or the term "delete." Nonetheless, appellant characterizes Canty's confession as "powerfully incriminating," "devastating" and lending "substantial weight to the prosecution's case." In addition, he argues that the error in admitting the redacted confession was not harmless since the evidence against him was far from overwhelming and was, instead, "virtually nonexistent." Appellant's Supplemental Brief at 17.

The Commonwealth insists that the redaction method was so complete that no indications of redaction were present and the standard set forth in *Gray* was satisfied.

We have reviewed the original and redacted statements carefully. Nowhere in the redacted statement are there overt indica-

tions of revision. When read in its redacted form, it is not obvious, or even noticeable, that parts of the statement were deleted or replaced. With respect to Roney and appellant, most, if not all, of their participation was omitted completely from the statement. The statement focuses primarily on Canty's criminal acts.

While there are very few references to other participants, the redacted statement clearly establishes that Canty did not act alone. At one point Canty is asked: "Who were you with?" His redacted reply was: "Other people." At another point Canty explains that he went to an apartment after the crime and "Nette and the kids were there."

Appellant insists that these excerpts were prejudicial. He argues that use of the term "other people" is "no less attention-drawing than the word delete or the use of blanks." Appellant's Supplemental Brief at 17. He claims that this reference and the one to Nette and the kids "pointed directly to him" since Nette is his wife.[3] Finally, he asserts that because his own statement "interlocked" with Canty's statement as to the date, time, location and other details of the crime, the admission of Canty's statement was "powerfully incriminating and devastating." *Id.*

We find that Canty's statement, despite being redacted before the decision in *Gray* was announced, nonetheless complied with *Gray*'s requirements and therefore its admission did not violate appellant's constitutional rights. Unlike in *Gray*, Canty's redacted statement did not reveal to the jury a specific name or the fact that one was omitted.[4] There was no mysterious Mr. "X" or gaping holes in the narrative read by the detective on the stand. The simple reference to "other people" did not directly incriminate appellant; indeed, the deletion of appellant's name and use of the term "other people," as opposed to a blank space or the term "deleted," is precisely what the *Gray* Court suggested the prosecution should have used in that

---

3. The jury was made aware of this fact because appellant's wife was called as a witness by the Commonwealth.

4. In the original version of the statement, Canty identified his two co-defendants by name and also identified their photographs.

case.[5] Further, the record reflects that one of the prosecutors specifically cautioned the other attorneys to refrain from displaying the marked-up statements to the jury, to insure that the jurors would not learn that the statements had been altered.

We interpret *Gray* as precluding the prosecution from offering a statement where the redaction itself is obvious to the jury, thereby drawing attention to the co-defendant. Use of the term "deleted" or "X" immediately signals jurors that a specific person was named by the declarant and they, the jurors, are not permitted to know that name. Coupled with the court's instruction that the jury refrain from using the statement against the co-defendant, the redacted statement becomes "powerfully incriminating," placing it within *Bruton's* protection. *See Gray, supra* at ——, 118 S.Ct. at 1157 (redacted confession "with blank prominent on its face" incriminates the co-defendant. The term "other man" does not have the same forceful impact. Not only does the term eliminate the name of the defendant, it also eliminates the fact that an alteration has been made. The powerfully incriminating nature of an obvious and glaring "hole" in the statement simply is not present when a generic term like "other man" is used.[6]

▇▇▇ With respect to the reference to appellant's wife, we observe that the *Gray* Court, while refining *Bruton* and *Richardson*, did not abandon the notion of inference or contextual inculpation. Instead, the Court reaffirmed *Richardson's* approval of statements that do not "refer directly to the defendant himself and which become incriminating only when linked with evidence introduced later at trial." *Id.*, at ——, 118 S.Ct. at 1157. What is prohibited are inferences involving statements that, "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve *inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial.*" *Id.* (emphasis supplied).

Appellant argues that the non-testifying co-defendant's statement is inadmissible under *Gray* because the statement, coupled with other evidence properly admitted at trial, gives rise to the inference that appellant participated in the crime. We disagree. *Gray* addresses the situation where a redacted statement of the co-defendant *itself* gives rise to the immediate inference that appellant was a participant. Appellant urges us to read *Gray* expansively, which we decline to do. The sixth amendment right of confrontation does not require the scope of protection that appellant seeks.

We are convinced that the inferences required in this case do not rise to the level of those prohibited in *Gray*. We are also certain that Canty's statement was neither "powerfully incriminating" nor "devastating" to appellant's case.[7]

Nearly an entire page of Canty's statement, wherein he explains that appellant gave him a utility company uniform to wear, insisted that he wear gloves and supplied him with a gun, was completely omitted from the redacted version. Also omitted from Canty's statement was appellant's description of the shooting and his warning to the others to refrain from telling anyone else about the incident.

---

5. Canty's statement was extensively redacted. In the beginning of the statement, Canty told police that appellant's nickname was "Boob." Thereafter, Canty repeatedly referred to Boob and Roney, telling police about their parts in the crime. However, the redacted statement omitted all references to the other men. When Canty was asked where he went the morning of the robbery, he replied: "Boob's house. An apartment complex on Conshohocken Ave. Chris and Boob were both there." The redacted statement simply reads: "An apartment complex." When asked what he did when he arrived at the bank, Canty explained: "Yes. Boob was driving. When we got there, he like drove around to see if any people was there. He let us out like right across the street and told us to go down to the corner and wait like we was waiting for the bus." The redacted statement reads: Yes. I got out right across the street and got down to the corner and waited like I was waiting for the bus."

6. It is reasonable to believe that the statement's maker told police that he and "another guy" committed the crime. In *Gray*, the declarant in fact used the term "other guys." The Court questioned why the prosecutor did not simply excise *Gray's* name altogether, leaving only the generic term.

7. The *Gray* Court clearly was troubled by "statements redacted to leave a blank or some other similarly obvious alteration," which the Court labeled "directly accusatory." *Id.* at ——, 118 S.Ct. at 1156.

For those same reasons, appellant is not entitled to relief simply because his own confession and Canty's were interlocking, *i.e.*, similar in their account of events. The existence of independent evidence "requiring linkage" is not a valid basis for precluding a statement's admission.[8] *See Gray, supra.*

Lastly, we find that appellant's claim that Canty's statement was "devastating" to his case is not supported by the record. We observe that admission of the statement remains subject to a harmless error analysis. *Wharton, supra; Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). The evidence established that appellant was identified as the driver of the getaway car. Further, a gun found at the scene was purchased for him by another at his request. His wife told police about his presence in their home shortly after the robbery/murder and the jury heard about the highly incriminating conversations he had with his cohorts on that day. In addition to all of that evidence, appellant made a complete confession to police which was properly admitted at trial. Contrary to appellant's claims, the evidence against him is far from "nonexistent"; it is overwhelming.

We find the admission of Mark Canty's redacted statement proper. We also find that even it the statement should not have been admitted, the error was harmless.

Judgment of sentence affirmed.

TAMILIA, J., concurs in the result.

---

8. The mention of Nette in Canty's statement, from which the jury could infer that appellant was a participant when Nette later testified, and the interlocking nature of Canty's statement, from which the jury could also infer that appellant was a participant, did not make Canty's statement inadmissible under *Gray*. There is no violation of *Gray* where the non-testifying co-defendant's statement incriminates the defendant only by inference from other evidence.