J-S01029-25                    2025 PA Super 55

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :         PENNSYLVANIA
                                           :
           v.                       :
                                           :
                                         :
DAVID ANDREW NEALY             :
                                         :
           Appellant           :    No. 303 MDA 2024

Appeal from the PCRA Order Entered February 23, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004591-2017

BEFORE:  NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY KING, J.:                       **FILED: MARCH 10, 2025**

Appellant, David Andrew Nealy, appeals from the order entered in the Luzerne County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth the relevant facts of this case as follows:

> On the night of October 12, 2013, [Appellant] and Roberto Battle drove together to Outsiders bar in Wilkes-Barre, Pennsylvania, in a silver 2005 Mercedes C230 sedan that [Appellant] had borrowed from Michael Goodrich.  As the two men entered the bar, security overheard [Appellant] introduce Battle as his "shooter."  Multiple staff and patrons of the bar observed [Appellant] and Battle in the bar.  As the evening progressed, Battle fought with another patron of the bar, and was evicted by security.  [Appellant] left the bar shortly thereafter, the two men departed together in the silver Mercedes, and proceeded to the residence of Shakim

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Varick and Jessica Fox. Varick grew up with [Appellant] and Battle, and Battle occasionally stayed at Varick's residence. Battle knew where Varick stored a Keltec handgun in his home. Battle entered the residence and removed Varick's Keltec handgun, loaded with Hornady Zombie 9mm ammunition, then returned to [Appellant] in the waiting Mercedes. Shortly after 2:00 a.m., [Appellant] and Battle drove back to Outsiders.

The victim, Michael Onley, was in Outsiders on the evening of October 12, 2013, taking promotional photographs for the bar. Onley had several friends on the Outsiders security staff, and was known to them and other patrons for his work as a local DJ. When the bar closed, Onley exited the building with patrons and staff, but lingered at the door where security typically congregated after they made a final patrol of the parking lot. As security was returning to the bar, [Appellant] and Battle drove past on Pennsylvania Avenue, and Battle fired multiple shots out of the passenger side window of the Mercedes into the parking lot and building. Dalair Edwards and Prince Rodriguez, bar security, heard gunshots and saw muzzle flashes coming from the passing silver sedan. Rodriguez, who testified that he could see the car clearly, identified it as the one in which [Appellant] and Battle left the club earlier. Security footage shows a passing car with muzzle flashes coming from the passenger window. When Edwards and Rodriguez returned to the bar entrance, they saw the victim lying on the ground with a gunshot wound to his head. Damien Pitters, a club patron in the parking lot when the shots were fired, saw the victim fall from a chair by the bar's door. Pitters, an army combat medic, moved to help, but despite efforts to revive the victim, he died of the gunshot wound.

Following the shooting, [Appellant] and Battle drove together to the home of Jamie Compton, where several people were gathered. While there, the group learned that the victim had been shot. In response to this news, Battle laughed and said that he had "shot the place up." After leaving Compton's residence, [Appellant] and Battle returned together to Shakim Varick's residence sometime between 3:00 a.m. and 3:30 a.m., where they encountered Varick and Jessica Fox. …Battle told Varick that [they] "did a drive-by" on Pennsylvania Avenue, and admitted that he

had used Varick's gun. Upon learning this, Varick checked and saw that the gun was no longer in the nightstand. Two days later, Battle returned the gun to Varick, empty of bullets. [Appellant] did not deny Battle's statement.

[Appellant], when testifying on his own behalf, denied knowing that Battle had a gun and intended to fire shots into Outsider's parking lot as staff and patrons exited the bar, but [Appellant] admitted to hearing those shots being fired and to abandoning the borrowed silver Mercedes after learning that the victim had been killed. Additionally, although [Appellant] expressed his remorse for the victim's death by the time the jury trial occurred, [Appellant] had not aided in the investigation of the crime by divulging to the police his knowledge of the night's events, or Battle's identity as the shooter.

*Commonwealth v. Nealy*, No. 1021 MDA 2019, unpublished memorandum at 1-3 (Pa.Super. filed Nov. 17, 2020), *appeal denied*, 666 Pa. 284, 252 A.3d 592 (2021) (quoting Trial Court Opinion, 12/10/19, at 6-8).

Procedurally:

A joint jury trial commenced on December 11, 2018, and, on December 17, 2018, the jury found both [Appellant] and Battle guilty of first-degree murder and criminal conspiracy. On January 31, 2019, the trial court sentenced [Appellant] to a mandatory life sentence on the first-degree murder conviction, and a consecutive seventeen to forty-year term of imprisonment on the conspiracy conviction. [Appellant] filed a timely post-sentence motion in which he challenged the sufficiency and the weight of the evidence supporting his convictions. The trial court denied [Appellant's] post-sentence motion on June 4, 2019. …

*Id.* at 3. This Court affirmed Appellant's judgment of sentence on November 17, 2020, and our Supreme Court denied allowance of appeal on April 13, 2021. *See id.*

On May 27, 2022, Appellant timely filed a *pro se* PCRA petition. The

- 3 -

court appointed counsel, who filed a supplemental PCRA petition on May 9, 2023. The court held a PCRA hearing on November 30, 2023, after which the court took the matter under advisement. On February 23, 2024, the court denied PCRA relief. Appellant timely filed a notice of appeal on February 29, 2024. On March 1, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant timely complied on March 8, 2024.

Appellant raises one issue for our review:

> Whether the PCRA Court erred by holding Trial Counsel was not ineffective for failing to object to or file motions *in limine* to prevent the admission of out of court statements from a non-testifying codefendant during trial that violated [Appellant's] rights to Confrontation under the Pennsylvania and Federal constitutions?

(Appellant's Brief at 4).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. *Commonwealth*

- 4 -

*v. Mojica*, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

Appellant argues that the admission of Battle's out-of-court statements at trial violated Appellant's rights to Confrontation under both the Pennsylvania and federal Constitutions. Appellant claims that Battle's statements, admitted at trial through the testimony of Varick,[2] were direct evidence that Appellant was an active participant in the victim's murder. Appellant highlights Varick's testimony which stated that Battle had said

_____

[2] Battle did not testify at trial.

- 5 -

"they" did a drive-by shooting. Appellant insists that "they" could only have meant Battle and Appellant. Appellant emphasizes that the Commonwealth argued during closing arguments that "they" referred to Appellant and Battle. Appellant also claims that another witness, Stephanie McGraw, also testified that Battle said he did a drive-by shooting. When considering McGraw's statement in the context of other testimony that Appellant and Battle were together the entire night the victim was murdered, Appellant submits this testimony also implicated Appellant.

Appellant maintains that trial counsel should have filed motions in *limine* to prevent admission of these statements at trial. Alternatively, Appellant contends that trial counsel should have objected to Battle's statements (by way of Varick and McGraw's testimony) at trial. Appellant insists this claim has arguable merit because admission of Battle's out-of-court statements violated Appellant's Confrontation Clause rights, and counsel had no reasonable basis for failing to seek exclusion of this evidence. Appellant further submits that he suffered prejudice where the court did not issue cautionary instructions immediately after Battle's statements were introduced into evidence, Battle's statements by way of Varick constituted direct evidence that Appellant participated in the murder, and Battle's statements by way of McGraw constituted circumstantial evidence of Appellant's participation in the murder. Appellant emphasizes that no other direct evidence established that Appellant was an active participant in the murder. Appellant also highlights

that the Commonwealth reinforced Battle's statements to the jury in closing arguments. Appellant concludes trial counsel was ineffective on these grounds, and this Court must vacate and remand for a new trial. We disagree.

"Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." *Commonwealth v. Rivera*, 565 Pa. 289, 299, 773 A.2d 131, 137 (2001), *cert. denied*, 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d 355 (2002). A defendant is deprived of his Sixth Amendment rights when his non-testifying co-defendant's facially incriminating confession is introduced at their joint trial, even if the jury is instructed that the confession can be considered only against the confessing co-defendant. *Id.* Nevertheless, "[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to [the non-confessing] defendant, then use of it does not violate the principles of *Bruton*[ *v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)]."[3] *Commonwealth v. Travers*, 564 Pa. 362, 368, 768 A.2d 845, 848 (2001).

In *Travers*, our Supreme Court held that the redaction of a non-testifying co-defendant's confession in a joint trial, which replaced any direct reference to the non-confessing co-defendant with a neutral pronoun, when

---

[3] In *Bruton*, the United States Supreme Court held that admission of a facially incriminating confession by a non-testifying co-defendant introduced at the defendant and co-defendant's joint trial, deprives a defendant of his Sixth Amendment right to confrontation, even where the court instructs the jury to consider the confession only against the co-defendant. *Id.* at 135-37; 88 S.Ct. at 1627-28; 20 L.Ed.2d at _____.

accompanied by an appropriate cautionary charge, sufficiently protected the non-confessing defendant's Sixth Amendment rights.[4]  ***Travers, supra*** at 372-73, 768 A.2d at 851.  The ***Travers*** Court observed Pennsylvania law is now clear that redacted statements trigger confrontation clause concerns under ***Bruton* only if** the redacted statement **on its face** ties the defendant to the crime, but not if the incrimination arises from linkage to other evidence in the case.  ***Id.*** at 372 n.2, 768 A.2d at 850 n.2 (citing ***Gray v. Maryland***, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998)).[5]  When the redacted statement is not powerfully incriminating on its face, however, the general rule that jurors can and will follow the court's cautionary jury instructions controls.  ***Travers, supra***.  ***See also Commonwealth v. Sanford***, 470 A.2d 998 (Pa.Super. 1984) (holding there was no violation of ***Bruton*** where trial court admitted redacted confessions of two of appellant's co-defendants and court replaced all mention of proper names with pronouns "we" and "us," and instructed jury that statements were to be considered only against speakers and not against remaining defendants; this redaction, coupled with court's

---

[4] In ***Travers***, the direct references to the non-confessing defendant contained in his co-defendant's confession were replaced with the words "the other man."

[5] In ***Gray***, the prosecution had redacted co-defendant A's confession by substituting a blank space or the word "deleted" for co-defendant B's name. The High Court concluded that the redaction was insufficient as it did not make a significant legal difference as compared to the original, unredacted statement.

limiting instructions, provided sufficient protection against denial of appellant's Sixth Amendment rights; use of "we" and "us" only alerted jury that at least one other person had acted with speaker).

Moreover, even where a redacted confession violates ***Bruton***, its admission might be harmless error if other properly admitted evidence overwhelmingly establishes the defendant's guilt. ***Commonwealth v. McGlone***, 716 A.2d 1280, 1284 (Pa.Super. 1998), *cert. denied*, 528 U.S. 932, 120 S.Ct. 332, 145 L.Ed.2d 259 (1999). Further, "the United States Supreme Court has not extended the reach of its *per se* ***Bruton*** rule to comments by counsel, which are by definition nonevidentiary." ***Commonwealth v. Roney***, 622 Pa. 1, 57, 79 A.3d 595, 629 (2013), *cert. denied*, 574 U.S. 829, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014). "[U]nder certain circumstances a prosecutor's comments might be so prejudicial as to raise the possibility of a ***Bruton*** violation, *e.g.*, if the prosecution discloses to the jury that the co-defendant's statement has been redacted and unequivocally identifies the defendant as the individual whose name was removed." ***Id.*** at 58, 79 A.3d at 629 (internal citation and quotation marks omitted) (holding that prosecutor's implicit linkage of one co-defendant's statement to appellant and other co-defendant referring to co-defendants collectively as "they" did not rise to egregious level to constitute ***Bruton*** violation).

Instantly, the PCRA court evaluated Appellant's claim as follows:

> Appellant's concise statement alleges that [the court] erred: "by denying (Appellant's) claim under subsection B of the

supplemental PCRA Petition filed on May 9, 2023, that his trial counsel was ineffective for failing to object to the hearsay statements of his co-defendant…" Appellant's supplemental PCRA Petition at subsection (B) also citing **Bruton**, identifies four (4) statements which he complains counsel was ineffective for failing to object to as follows:

A. Stephanie McGraw testified that Mr. Battle and [Appellant] arrived at her house together and Mr. Battle said "that he shot up the place and proceeded to laugh about it." Trial Tr. 182:8-18.

B. Shakim Varick testified that "When I asked Battle what's going on, he said they put in work" which meant that he and (Appellant) physically harmed someone. Trial Tr. 219:15-220:5.

C. Shakim Varick specifically testified that Mr. Battle said "they" meaning (Appellant) and himself jointly, did a drive by shooting. Trial Tr. 220:3-23.

D. Jessica Fox testified that Mr. Battle, among others, were discussing the shooting at Outsiders the night the shooting occurred with the clear implication that they were involved in the shooting. Trial Tr. 260:3-14[.6]

As Appellant's counsel points out, Stephanie McGraw testified that she encountered Battle and Appellant just after the killing and Battle said, "that he shot up the place and proceeded to laugh about it." Voluntary extrajudicial statements made by a defendant may be used against him and are generally considered to qualify for admission into evidence pursuant to the admission exception to the rule against hearsay. **Commonwealth v. Kitchen**, [730 A.2d 513 (Pa.Super. 1999)]. Battle's statement to Stephanie McGraw admitting to "shooting up the place" is thus not hearsay.

Battle's statement to McGraw does not implicate the rule in

_____

6 Appellant does not challenge the statement by Jessica Fox on appeal, so we do not discuss it further.

***Bruton*** either. …

In the present case, Co-defendant Battle's out of court statements to McGraw which implicate him directly in the killing of [the victim] did not directly implicate Appellant. Though Appellant argues that Battle's confessions to McGraw incriminated Appellant by implication, such evidence has not been held to violate a defendant's 6th Amendment Confrontation rights. When we instructed the jury, we gave a cautionary instruction directing them not to consider Battle's statements against Appellant. This allegation of error is meritless.

Appellant was not prejudiced by McGraw's testimony either. Appellant testified at trial and in so doing he identified himself as the driver and Battle as the shooter in the drive by shooting that killed [the victim]. His testimony totally eclipses the purported hearsay testimony offered by McGraw. Indeed, at the PCRA hearing, Appellant testified that he wanted trial counsel to recall McGraw to the stand to repeat the statement Battle made to her. For each of these reasons, Appellant's allegations of error relative to the testimony of McGraw are wholly without merit.

Appellant next cites two statements from the testimony of Shakim Varick which he argues alternatively are hearsay which also implicates his Confrontation Rights triggering the application of the rule announced in ***Bruton***. Shakim Varick encountered Appellant and Battle at his residence at approximately 3:30 AM on the night of the killing. At trial, Varick testified that he saw Appellant that night and it looked like he was sweating. The relevant exchange followed:

    Q: How did they look to you at this point?

    Varick: (Appellant) was sweating. When he came through I asked him what's going on and he said I should ask Battle what's going on?

    Q: So he told you to ask Battle what's going on?

    Varick: Yes.

Q: What happened when you asked Battle what's going on?

Varick: When I asked Battle what's going on, he said they put in work.

Q: When he said they put in work, can you tell us what that means?

Varick: Like physically harming somebody.

Q: Did there come a time they actually described what they did?

Varick: Yes

Q: Describe that?

Varick: When I asked Battle what did he do and he said, yeah, I did a drive by?

Q: They did a drive-by?

[Varick]: Yes.

Q: He didn't say I did a drive-by?

[Varick]: No.

(Trial N.T. 219-220).

… [Under **Sanford, supra**], Battle's statements implicating himself and, only by implication, Appellant, do not fall within the ambit of **Bruton**.

\*    \*    \*

…   We agree with trial counsel's assessment because not one of Battle's statements directly implicates Appellant.   … Accordingly, Appellant's claim lacks arguable merit, and because trial counsel clearly had a reasonable basis for not filing a frivolous motion, his claim of error fails.

(PCRA Court Opinion, filed 5/24/24, at 6-10; 13) (some internal citations

omitted).

We agree with the PCRA court's analysis. Trial counsel testified at the PCRA hearing that he did not object to Varick's statement that "when I asked Battle what's going on he said, they put in work" because the statement did not specifically mention Appellant. (*See* N.T. PCRA Hearing, 11/30/23, at 4-5). Trial counsel stated that "[i]t was a vague statement made by Mr. Varick when he was trying to make a deal with the United States Attorney's Office and signed a *Kastigar*[7] letter in order to basically become a witness for the Commonwealth." (*Id.* at 5). When PCRA counsel asked trial counsel if he was aware that Varick was going to testify that Battle said "**they**, meaning, [Appellant] and Battle did a drive-by shooting[,]" trial counsel reiterated that Battle used the generic **they** and did not specifically implicate Appellant. (*Id.*) (emphasis in original) (some internal quotation marks omitted).

When asked why trial counsel did not file motions *in limine* to exclude the challenged statements, trial counsel emphasized that "the statements that were discussed, none of them specifically identified [Appellant] by name. Even if it were with regard to any statements that perhaps Mr. Battle may have made, as far as being in an incriminating nature, my recollection is that at no time did Mr. Battle specifically identify [Appellant]." (*Id.* at 7). Trial

---

[7] *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (explaining that transactional immunity provides witness full immunity from prosecution for crimes arising from any transaction concerning which witness was compelled to testify).

counsel continued: "He used generic terminology like **we** or that **the place was shot up**. He never identified [Appellant] as having been complicit in that." (***Id.***) (emphasis in original). Trial counsel went on to state that when he "did the research on ***Bruton***, which would basically preclude some of those statements had they identified [Appellant], they had already been realistically redacted because the remedy is for the [c]ourt to redact any specific reference to a co-defendant in a joint trial, which this was." (***Id.***) The following exchange then took place between PCRA counsel and trial counsel:

> [PCRA counsel]: And you would agree with me that for at least the statement that Shakim Varick testified to that when I asked Battle what's going on he said, they put in work. Only [Appellant] and Mr. Battle and Mr. Varick were present for that statement, right?
>
> [Trial counsel]: I think supposedly one or two of the other females were possibly at that location, as well. And Mr. Varick supposedly had not been around at the time of the shooting. Who also interestingly enough drove a similarly colored vehicle and style-type vehicle as [Appellant].
>
> [PCRA counsel]: You would agree with me though that Mr. Battle's statement that **they** only referred to himself and [Appellant]?
>
> [Trial counsel]: I did not draw that conclusion because the statement was vague enough that—**we put in the work**, okay. Well, that doesn't necessarily mean that any other person that was along with Mr. Battle, might not have gone to the apartment. May have stopped off somewhere else. May have gone someplace else.
>
> But he never specifically identified [Appellant]. Nor from what I can recall from discovery, which I extensively reviewed and actually had another attorney help me review because I was concerned about these statements, was

basically he never specifically refers to [Appellant].

And **we** and those different terms and the terminology that Mr. Battle was using was generic in nature. And from what I recall, [Appellant] never said anything with regards to that he was complicit. My understanding was he was sulking in a corner. Apparently according to one of the witnesses, seeming somewhat upset. That, I don't believe, lead me to believe that was who Mr. Battle was referring to, [Appellant].

(**Id.** at 7-9) (emphasis in original).

Trial counsel also indicated that he did not want to draw any attention to this statement by objecting to it because, in counsel's experience, "that draws attention to the jury to something that is quite frankly you want to leave it as is; **they**." (**Id.** at 11) (emphasis in original). Trial counsel suggested that Battle's reference to "they" could have included Appellant "or any one of another dozen people who could have been involved, including Mr. Varick, who mysteriously had disappeared to New York and then reappeared right after the shooting." (**Id.**) As part of his trial strategy, trial counsel explained that he would not want to highlight Battle's statements by objecting to them, which are statements against interest, especially where it did not specifically identify his client, Appellant. (**Id.**) Trial counsel indicated that part of his trial strategy was "pointing the finger" at Mr. Varick, who counsel argued received a "sweetheart deal" in exchange for his testimony. (**Id.** at 13-14).

Regarding Stephanie McGraw's statement that Battle said "that he shot the place up and proceeded to laugh about it[,]" trial counsel explained that

he did not object to this statement, which only implicated Battle. (*Id.* at 9-10). Trial counsel repeated that "[a]s far as I could tell, when I reviewed the file in whole, I don't believe at any point in time did [Battle] specifically implicate [Appellant] as being an accomplice, an associate or in any way being involved in this." (*Id.* at 10). Regarding this statement, Appellant testified at the PCRA hearing that he believed "the statement couldn't hurt me. If anything, it more helps more towards my defense." (*Id.* at 27). When the statement was made at trial, Appellant claimed he wanted trial counsel to recall McGraw so trial counsel could "put more light onto her statement." (*Id.* at 27-28).

On this record, we agree with the PCRA court that Appellant's claim lacks arguable merit. As to McGraw's statement, the record makes clear that McGraw's testimony concerning what Battle said implicated only Battle, where Battle said "**he** shot the place up and then proceeded to laugh about it." (*See* N.T. Trial, 12/12/18, at 182) (emphasis added). As nothing in this statement is facially incriminating as to Appellant, any challenge to this statement merits no relief. *See Rivera, supra*. Further, as previously mentioned, Appellant testified at the PCRA hearing that McGraw's testimony to this effect strengthened Appellant's theory of the case, and Appellant even wanted to recall McGraw to provide more details about this statement. Thus, Appellant's claim that trial counsel was ineffective for failing to move for exclusion of this evidence lacks arguable merit, and Appellant did not suffer prejudice

- 16 -

concerning this statement by McGraw in any event.  *See Sandusky, supra*.

Regarding Varick's statements that Battle had said "they put in work" (*see* N.T. Trial, 12/12/18, at 219) and "they did a drive-by" (*see id.* at 220), we agree with trial counsel that Battle's use of the word "they" effectively redacted the statements and did not directly implicate Appellant to trigger a violation of *Bruton*.  *See Rivera, supra*.  *See also Travers, supra*; *Sanford, supra*.  Although Appellant contends that these statements implied that Battle was referencing Appellant because other evidence showed Appellant and Battle were together the entire night, such implication is not "facially incriminating" against Appellant to trigger *Bruton* concerns.  *See Travers, supra*; *Sanford, supra*.  Further, we disagree with Appellant's contention that the context of Varick's statement made clear that Battle was necessarily talking about himself and Appellant when using the word "they." Although the context of the statement begins with Varick explaining how Appellant and Battle had arrived at Varick's house (*see* N.T. Trial, 12/12/18, at 218-19), that does not lend itself to the conclusion that Battle must have been referencing Appellant when he said, "they put in the work" and "they did a drive by."

Notably, the court also issued a cautionary instruction during its jury charge.  (*See* N.T. Trial, 12/17/28, at 685) (stating: "A statement made before trial may be considered as evidence only against the defendant who made that statement.  Thus, you may consider the statements as evidence

against the defendant, Roberto Battle, if you believe he made the statement voluntarily. You must not, however, consider the statement as evidence against [Appellant]; and you must not use the statement in any way against him"). The jury is presumed to have followed the court's instructions. **See Travers, supra**. Appellant fails to acknowledge the instruction given during the jury charge and complains that the court did not issue an **immediate** cautionary instruction. Appellant cites no law, however, to support an argument that an immediate cautionary instruction is required to remedy a potential **Bruton** violation. Moreover, even if the challenged statements violate **Bruton**, such error is harmless where Appellant testified at trial that he was driving the vehicle when Battle fired the shots. (**See** N.T. Trial, 12/14/18, at 542-553). **See also McGlone, supra**.

Further, counsel made clear that he did not file motions *in limine* to exclude the challenged statements where they did not mention Appellant by name, and did not object to them at trial because counsel did not want to highlight the testimony for the jury. We cannot say that counsel's chosen strategy was unreasonable based on the controlling law. **See Sandusky, supra**.

Appellant also claims prejudice where the prosecutor highlighted the challenged statements in the prosecutor's closing arguments. Nevertheless, the prosecutor's statements are not evidence. **See Roney, supra**. As well, the prosecutor's argument that Battle's reference to "they" meant Appellant

and Battle was a proper inference based on the evidence, particularly in light of Appellant's testimony. Additionally, Appellant claims that he "**may not** have testified if these improper statements did not place him at the scene of the murder and with the murderer before and after [the victim] was killed." (Appellant's Brief at 24) (emphasis added). Initially, this does not satisfy the prejudice threshold, *i.e.*, that there is a reasonable probability that the outcome of the proceedings would have been different. ***See Sandusky, supra***. Further, Appellant made no claim at the PCRA hearing that he would not have testified in his own defense had the challenged statements not come in at trial. Based upon the foregoing, we agree with the PCRA court that Appellant has failed to demonstrate trial counsel's ineffectiveness on the grounds alleged. ***See id.*** Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/10/2025